Basil C. Meadows and Pauline Meadows v. Commissioner. Charles S. Cadman, Jr., and Eleanor G. Cadman v. Commissioner.
Meadows v. Commissioner
Docket Nos. 73026, 73280.
United States Tax Court
T.C. Memo 1959-200; 1959 Tax Ct. Memo LEXIS 46; 18 T.C.M. (CCH) 892; T.C.M. (RIA) 59200; October 26, 1959
*46 Joseph B. White, Esq., for the petitioners. Robert W. Siegel, Esq., and John J. Yurow, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner has determined deficiencies in the income tax of the petitioners as follows: Docket No.
Petitioner
Year
Deficiency
73026
Basil C. Meadows and Pauline Meadows
1955
$332.56
73280
Charles S. Cadman, Jr., and Eleanor G. Cadman
1954
95.15
1955
359.50
The issues foe determination are the correctness of the respondent's action in determining (1) the amount of income received by petitioner Pauline Meadows as tips during 1955 and (2) the amounts of income received by petitioner Eleanor G. Cadman as tips during 1954 and 1955, respectively. Findings of Fact Basil C. Meadows and Pauline Meadows are husband and wife residing in Grand Rapids, Michigan. They filed their joint Federal income tax return for 1955 with the district director in Detroit, Michigan. Charles S. Cadman, Jr., and Eleanor G. Cadman are husband and wife residing in Grand Rapids, Michigan. They filed their joint Federal income tax returns for 1954 and 1955 with the district *47 director in DetroitMichigan. Since Basil C. Meadows is involved herein only by reason of his having filed a joint return with his wife for 1955 and similarly Charles S. Cadman, Jr., is involved herein only by reason of his having filed joint returns with his wife for 1954 and 1955, their respective wives, Pauline Meadows and Eleanor G. Cadman, will be referred to sometimes hereinafter as petitioner or petitioners. Pauline Meadows entered the employment of Schnitzelbank Restaurant, Grand Rapids, Michigan, as a waitress in November 1954 and continued her employment there in that capacity throughout 1955. Prior to entering the employment of Schnitzelbank, she had voluntarily terminated her employment with General Motors in which her pay averaged about $80 per week. Eleanor G. Cadman entered the employment of the Schnitzelbank Restaurant as a waitress in September 1953 but terminated her employment at the end of 1953. During 1954 she resumed her employment there in the same capacity and continued to work there throughout 1955. Prior to entering the employment of Schnitzelbank in 1953 she had worked as a waitress at another restaurant for approximately 8 years. Schnitzelbank is a *48 large, well-appointed restaurant, consisting of several dining rooms and a room in which the bar is situated. An addition which was opened in January 1955 has been used primarily for large parties and banquets. The decor both inside and outside is distinctively Old World. The Schnitzelbank specializes in American and German style cooking. In addition to serving food the restaurant served liquor, some of which is served at the bar and some is served at the tables in the dining rooms by the waitresses. During the years in question Schnitzelbank served a noon meal or luncheon from 11 a.m. to 2:30 p.m. and an evening meal or dinner from 4:30 to 8:30 p.m. The average luncheon price was approximately $1.00, not including cocktails, and the average dinner price was $2.00, not including cocktails. The restaurant served 6 days a week and an average of from 250 to 275 lunches and from 235 to 250 dinners were served daily. Approximately 75 per cent of the luncheon customers were men while the dinner customers were largely families. Schnitzelbank's total sales were $288,084.74 for 1954 and $397,717.30 for 1955. About 10 per cent of the foregoing amounts represented sales of liquor. During *49 1954 the restaurant employed 12 waitresses steadily and sometimes an extra waitress. During 1955, after the opening of the new addition, 15 waitresses were employed steadily. Waitresses worked two shifts. The first shift was the time during which the noon meal or lunch was served and the second shift was the time during which the evening meal or dinner was served. The restaurant paid the waitresses $4 per day for working both shifts. The average tip left at lunch time by customers of the restaurant during 1954 and 1955 amounted to 10 per cent of the customer's check. During her employment at Schnitzelbank in 1955 Pauline worked both shifts, serving the noon and the evening meals. Her station was in the main dining room and consisted of four tables, one of which seated four persons and the remaining three seated two persons each. She did not keep any record of the tips she received in 1955. During 1955 she worked 240 days or the equivalent of 48 weeks of 5 days each at Schnitzelbank and received income from tips in the amount of $1,440. In the joint income tax return filed by Pauline and her husband for 1955 her salary from Schnitzelbank was shown as $1,157.90 and her income from *50 tips was shown as $150. In determining the deficiency against her and her husband the respondent determined that during 1955 she had received tips of $37.50 a week for 50 weeks or total tips of $1,875 for the year and that her income from tips had been understated in her return by $1,725. During the first part of her employment as a waitress at Schnitzelbank in 1954 Eleanor regularly worked during the noon meal and also occasionally worked during the evening meal for other waitresses who were absent. The petitioner's station during the noon meal was in the main dining room and consisted of tables at which 16 persons could be seated. Thereafter, and until the end of 1954, the petitioner regularly worked both shifts, serving the noon and the evening meals. Her station during this period was also in the maining dining room and consisted of tables at which 16 persons could be seated. She did not keep any record of the tips she received. In 1954 she worked 20 weeks of 5 days each during which she served only the noon meal and 7 weeks of 5 days each during which she served both the noon and the evening meals. During the 27 weeks the petitioner received income from tips in the amount of *51 $410. In the joint income tax return filed by Eleanor and her husband for 1954 her salary from Schnitzelbank was reported as $551.20 but no amount was reported as her income from tips. In determining the deficiency against her and her husband for 1954 the respondent determined that during that year she received tips of $15 per week for 22 weeks and tips of $37.50 per week for 5 weeks or total tips for the year of $517.50 and that her income from tips had been understated in her return by that amount. During 1955 Eleanor worked both shifts at Schnitzelbank serving both the noon and the evening meals on Mondays through Fridays, and the evening meal on Saturdays. Her station during the year was in the main dining room and consisted of tables at which 16 persons could be seated. The station was on an aisle and was considered by some as a weak station because of the aversion of some customers to sitting on or near an aisle. During 1955 she worked 41 weeks of 5 1/2 days each or the equivalent of 45 weeks of 5 days each. She did not keep a record of the tips she received during 1955. She received income from tips in the amount of $1,350 during 1955. In the joint income tax return filed *52 by Eleanor and her husband for 1955 her salary from Schnitzelbank was reported as $1,258.83 and her income from tips was reported as $150. In determining the deficiency against her and her husband for 1955 the respondent determined that during that year she received tips of $37.50 per week for 50 weeks or total tips of $1,875 and that her income from tips had been understated in her return by $1,725. Opinion Relying on the testimony of Eleanor to the effect that the tips she received in 1954 were insignificant and that the tips she received in 1955 amounted to approximately $150, and on the testimony of Pauline to the effect that the tips she received in 1955 amounted to approximately $150, the petitioners contend that the respondent's determinations were erroneous and should not be sustained. The respondent contends that his determinations are correct and should be sustained. Petitioners did not maintain a record of the number of days or weeks that they worked during their respective taxable years here involved. Nor is such information available from Schnitzelbank's records. During those years if a waitress desired to be absent for one meal or for one day or for several days *53 she could obtain a substitute to serve in her station and the records of Schnitzelbank would show that the waitress and not her substitute was on duty. Each of the petitioners testified to being off from work at various times during their respective taxable years. From the record presented we have determined, as set out in our findings, the number of days and weeks each petitioner worked. Pauline testified that she kept a record of the tips she received in 1955 by depositing them daily in a jar at her home and withdrawing them from the jar from time to time to make installment payments on a saw which she purchased for her husband at a price of $155 or $160. She further testified that she paid $150 on the saw, using in addition to money taken from the jar other money which she had; and that her husband made an undisclosed number of installment payments in finishing payment for the saw. In our opinion the petitioner's testimony not only fails to establish that she kept a record of her tips but affirmatively shows that she did not keep such a record. Accordingly, we have found as a fact that she did not keep a record of her tips. The recent case of Dorothy L. Sutherland, 32 T.C. - *54 (June 30, 1959), involved the tax liability for 1953, 1954, and 1955 of a waitress who, like the petitioners herein, did not keep any records of the income received by her as tips. There we pointed out that every taxpayer is required by law to report in his income tax return, fully and honestly, every item of gross income received, and must maintain adequate records of some kind which will show to him and to the Commissioner the amount of income of all types received in each year; that if the taxpayer does not keep any records to show the full amount of every kind of income received in a taxable year, or if such records as are kept do not clearly show the entire income, the Commissioner is authorized to make a computation of the amount of income in accordance with such method as in his opinion does clearly show the full amount of income received; that a computation of income so made by the Commissioner is presumptively correct under law and the taxpayer has the burden of proving that it is erroneous; and that such burden is not discharged by the taxpayer's estimates of income, or his unsubstantiated, uncorroborated, and self-serving testimony that the amounts reported in his return *55 are correct. The petitioners did not keep any record of the tips they received. The testimony of Eleanor is to the effect that the tips she received in 1954 were of an insignificant amount and that the amount which she reported in her return for 1955 as income from that source, namely, $150, or an average of $3.66 a week for the 41 weeks of 5 1/2 days each which she worked in 1955, was correct. The testimony of Pauline is to the effect that the amount which she reported in her return for 1955 as income from tips, namely, $150, or an average of 63 cents a day for the 240 days she worked in 1955, was correct. We are unable to find in the record corroboration or substantiation of such testimony. The respondent submitted evidence showing that in determining the deficiencies involved herein he proceeded as follows: He first determined the gross sale of Schnitzelbank for 1954 and 1955 and reduced them by $8,000 and $10,000, respectively, to eliminate the amounts which he estimated were received from sales of liquor made at the bar. He then determined that the total number of weeks worked by all waitresses during 1954 and 1955 was 457 and 641, respectively. He next divided the gross *56 sales (as reduced by the estimated bar sales) for 1954 and 1955 by the amounts of 457 and 641, respectively, and determined that in each year each waitress who worked a full 6-day week delivered an average of approximately $600 in sales each week. In order to allow for the fact that Pauline Meadows and Eleanor G. Cadman did not always work a full 6-day week, he determined that the average weekly sales delivered by them was $500. He then determined that their average weekly tips amounted to 7 1/2 per cent of $500 or $37.50. The amount of 7 1/2 per cent rather than 10 per cent was used to allow for the failure of some customers to tip and to allow the petitioners the benefit of their contentions that they did not work on some of the days which the records of Schnitzelbank showed them to have been on duty. Using as a base the amount of $37.50 (that amount being adjusted for the period in 1954 when Eleanor served only the noon meal), the respondent determined the total amounts received as tips by Pauline and Eleanor during the years in question to be as follows: 1954
1955
Pauline -
$37.50 for 50 weeks
$1,875
Eleanor -
$15.00 per week for 22 weeks
$330.00
$37.50 per week for 5 weeks
187.50
$517.50
$37.50 per week for 50 weeks
1,875
*57 The respondent also submitted the testimony of Phyllis Bolt who was employed as a waitress at Schnitzelbank for a period of about 9 months beginning in December 1954 and ending in August 1955. She worked during both the noon meal and the evening meal for 5 days a week. She testified that, on the basis of her experience at Schnitzelbank, tipping at the noon meal was rather consistent throughout the week, and that on an average the customers left as a tip an amount equal to 10 per cent of their meal checks. She further testified that during the evening meal on Mondays, Tuesdays, and Wednesdays her tips averaged from $2 to $3 each evening, during the evening meal on Thursdays from $6 to $8, and during the evening meal on Saturdays from $8 to $10, and that on an average her tips amounted to approximately $30 a week during her employment at Schnitzelbank. She terminated her employment there because of her pregnancy. The testimony of this witness was direct, straightforward and impressive and we are unable to find from the record anything as to the size and location of her station or as to any other matter which would indicate that her experience as to tips was exceptional or unusual and *58 was substantially different from that of waitresses generally who worked both shifts at Schnitzelbank. The respondent has used a formula for determining the amount of tips received by Pauline in 1955 and Eleanor in 1954 and 1955. By that formula he has determined that the tips received by each petitioner averaged $37.50 per week of 5 days with petitioners working two shifts a day. On the basis of the testimony of respondent's witness, Phyllis Bolt, it appears that the use of the formula results in a determination of weekly tips in an amount which is substantially in excess of the amount that was actually received by waitresses generally who worked two shifts for 5 days a week. As a consequence we are unable to sustain the respondent's determination as to the average amount of tips received weekly by Pauline in 1955 and Eleanor in 1954 and 1955. In view of the foregoing and from a consideration of all of the evidence of record bearing on the question, we are of the opinion and have found as facts that Pauline in 1955 received income from tips in the amount of $1,440 and Eleanor in 1954 and 1955 received income from tips in the amounts of $410 and $1,350, respectively. Decisions *59 will be entered under Rule 50.